## Tappan *vs.* Sargeant.

In a replication to a plea of usury, the plaintiff must deny the usury positively;
and the replication will be bad for argumentativeness, if it set forth a narrative
of facts, and then deny that there was usury other than as above set forth.

A replication to a plea of usury averred that the plaintiff, not having the money
on hand, was induced by the defendant to procure it from a bank, and that, as a
compensation for his trouble, the defendant promised to allow him one and a
half per cent. on the money annually; that he procured the money and lent it
to the defendant, for which the latter gave the note in suit, and that when the
lawful interest was paid on the note, he received the excess aforesaid in pursu-
ance of the defendant's promise, and for no other purpose.   The usury other
than as above set forth, was then denied in the words of the statute.  *Held,* that
the replication was bad, as all the facts alleged might have existed, and yet the
plaintiff might have known that the excess was received as usury;—that the
statement of facts, if it meant anything, was intended to qualify the oath;—and
that the statute appealed to the conscience of the lender, and intended the oath
should be taken positively and without any such qualification as the narrative
of facts would import.

Assumpsit, on a promissory note.    The defendant pleaded
that it was corruptly agreed between the parties, that the in-
terest upon said note should be after the rate of seven and
one half per cent. per annum, and that he paid interest in
pursuance of such agreement, and he prayed that a deduction
might be made, according to the statute.

The replication stated that when the money was lent, the
plaintiff not having it on hand was induced by the defend-
ant to procure it at the Claremont Bank, and as a compensa-
tion for the plaintiff's trouble, the defendant promised to
allow him one and a half per cent. annually, until the debt
should be paid;—that the plaintiff procured the money and

lent it to the defendant, for which the defendant gave the note in suit;—that when the lawful interest was paid on the note as it became annually due, he received the sum of three dollars at one time, and three dollars at another time, being the one and a half per cent. per annum paid in pursuance of said promise, and for no other purpose, and that there was not, directly or indirectly, or unlawfully, anything reserved, secured or taken in and by said note more than after the rate of six per cent. per annum, for the forbearance or giving day of payment for said sum of two hundred dollars, other than as above set forth, and that he was ready to verify this by his oath.

To this replication the defendant demurred, and the plaintiff joined in demurrer.

*Leland*, for the plaintiff. Whatever sum has been received by the plaintiff as a compensation for actual trouble, independent of any usurious agreement, is not usury. *Willie* vs. *Green*, 2 *N. H. Rep.* 337. The demurrer admits that the excess was received for the plaintiff's trouble, and not directly nor indirectly for the loan. *Copeland* vs. *Jones*, 3 *N. H. Rep.* 116; *Gibson* vs. *Stearns*, 3 *N. H. Rep.* 185, 187. The replication then answers the plea, and is sufficient.

*Cushing*, for the defendant.

GILCHRIST, J. The act to restrain the taking of unlawful interest, section 2, provides, that upon a plea of usury a deduction shall be made, unless the creditor will swear that he has not, directly or indirectly, willingly taken or received more than after the rate of six per cent. per annum for forbearance or giving day of payment, and that by the bond, contract, &c., there is not reserved, secured or taken, more than after that rate. *N. H. Laws* 134, *Ed. of* 1830.

The creditor is thus required to take an oath which involves two distinct propositions: first, that he has not received interest at a greater rate than six per cent.; secondly,

Tappan *v.* Sargeant.

that the contract does not secure or reserve interest at a greater rate than six per cent. In relation to the second proposition, the replication complies with the statute, but the question in the case arises as to the sufficiency of the replication in regard to the first proposition.

Upon this point it may be remarked, in relation to the statute against usury, that it appeals to the conscience of the lender. Whatever may have been the conversation which actually took place between the parties, and however expressly they may have said that the excess was solely for the purpose of compensating the lender for his actual trouble, he knows what was in truth the real intention of the parties. Whether what took place were anything more than a plausible and ingenious contrivance to avoid the operation of the law ; whether that which the parties spoke of as a compensation for trouble were anything more than usury under another name ; whether any trouble were incurred beyond that which any lender experiences who advances his money and takes security for its re-payment ; whether what was said might not convey a certain impression to a listener, while the parties knew that the truth was widely different from that impression ;—all these facts the lender is acquainted with, and the statute requires them all to be negatived in the comprehensive form it has provided. The makers of the law were not ignorant that persons who have money to lend, and who desire to receive from it all the income they legally may, will resort to innumerable schemes and skilfully devised plans to make a profit, and escape a penalty. They reasoned from the ordinary experience of mankind, and this taught them when application was made for a loan to persons who had money for which they were seeking an investment, how many difficulties were often in the way, and how much trouble the unfortunate capitalist often underwent before the desired sum could be raised. They undoubtedly suspected, too, that sometimes these difficulties and troubles were the mere creatures of the imagination. They, therefore, to en-

force the observance of the law, prescribed an oath which any person could readily take who knew that no usury was intended, and which any one would be deterred from taking when he knew that the parties meant to violate the law, unless he valued his money more than his integrity. Now all the facts alleged in the replication may be true; that is, witnesses may exist who can prove them as they are stated, and yet the parties may know that usury was intended to be paid and received. Because all these things happened, we cannot infer that something else did not happen; that usury did not exist. But the plaintiff says that the facts were as he has stated them, and then he denies the usury. But it is very clear that this is only an argumentative denial of the usury, and was so intended. If it be not so intended, why are the facts set forth? The plaintiff says there was no agreement to pay usury, because there was an agreement to pay one and a half per cent. as a compensation for his trouble. But there was either usury in the contract, or there was not. If there were none, and if the allegation about the trouble he was put to were not a mere veil to conceal usury, then the plaintiff can conscientiously take the oath prescribed by the statute, without any qualification or any narrative of facts. If there were usury in fact, he cannot take the oath. If he be unwilling to swear that the excess was not received for forbearance and giving day of payment, it must be because he is conscious it was so received. The statute is searching in its operation, and was so intended to be, and the law can be administered only by rejecting every thing which it does not require, and by confining the party to the words of the statute. If we go beyond the statute, and admit any qualification, it will be impossible to know where to stop. " As the law permits the creditor to clear himself by his own oath, he must do it *directly*, positively, and in the broadest terms." *Copeland* vs. *Jones*, 3 *N. H. Rep.* 118. The replication is bad, and upon the demurrer there must be *Judgment for the defendant.*